Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6012 | **DATE** | 7/9/2001 |
| **CASE TITLE** | Ernst Jacobson vs. National Railroad Passenger Corp. and Ian Kaplan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion for a new trial [doc. # 191-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 10 2001 date docketed | 198 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | IS docketing deputy initials | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 JUL -9 PM 2:02 | 7/9/2001 date mailed notice | |
| JJK | courtroom deputy's initials | Date/time received in central Clerk's Office | JJK7777 mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ERNST JACOBSON, )
)
    Plaintiff, )
)
    vs. ) No. 97 C 6012
)
) Magistrate Judge Schenkier
THE NATIONAL RAILROAD )
PASSENGER CORPORATION a/k/a )
AMTRAK, and IAN KAPLAN, )
)
    Defendants. )

DOCKETED JUL 1 0 2001

## MEMORANDUM OPINION AND ORDER

This lawsuit has its genesis in an encounter that took place on December 22, 1996 at Chicago's Union Station. The main protagonists in this encounter were plaintiff, Ernst Jacobson, and defendant, Ian Kaplan, who was employed as a police officer by the defendant National Railroad Passenger Corporation (also known as Amtrak). Mr. Jacobson claimed that Mr. Kaplan used excessive force against him during this encounter, and sought recovery (1) from Mr. Kaplan pursuant to 42 U.S.C. § 1983, and (2) from both Mr. Kaplan and Amtrak for common law battery. For his part, Mr. Kaplan sought recovery from Mr. Jacobson for malicious prosecution, as a result of Mr. Jacobson instituting an unsuccessful state court criminal battery charge against him based on the December 22, 1996 encounter.

The trial of Mr. Jacobson's claims and Mr. Kaplan's counterclaim commenced on April 16, 2001 (by the time of trial, other claims and parties that Mr. Jacobson had joined in the suit had been dismissed by earlier rulings of the Court or settlement). On April 20, 2001, the jury returned a verdict for the defendants on Mr. Jacobson's claims, and for Mr. Jacobson on Mr. Kaplan's

198

malicious prosecution counterclaim. On April 23, 2001, the Court entered judgment on those verdicts.

Thereafter, on May 7, 2001, Mr. Jacobson timely filed the motion for new trial pursuant to Fed. R. Civ. P. 59. Under Rule 59, a new trial should not be granted unless "the verdict stands against the weight of the evidence or if, for other reasons, the trial was not fair to the losing party." *Alverio v. Sam's Warehouse Club, Inc.*, ___ F.3d ___, No. 00-1971, 2001 WL 615240, *4 (7th Cir., June 6, 2001) (citing *Pickens v. Runyon*, 128 F.3d 1151, 1156 (7th Cir. 1997)). In his motion for a new trial, Mr. Jacobson does not assert that the verdict was against the weight of the evidence. Rather, Mr. Jacobson claims he was denied a fair trial as a result of one evidentiary ruling and one discovery ruling. Specifically, Mr. Jacobson claims that he was unfairly prejudiced by: (1) the extent to which the Court allowed Mr. Jacobson to be cross-examined concerning the disposition of the state court criminal battery charge he initiated against Mr. Kaplan, and (2) a ruling denying Mr. Jacobson's motion to compel certain notes of Amtrak's internal investigation of the December 22, 1996 encounter.

In considering plaintiff's motion, we begin with the proposition that "[c]ivil litigants are entitled to a fair trial, not a perfect one . . . [A] new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties." *Wilson v. Groaning*, 25 F.3d 581, 584 (7th Cir. 1984) (quoting *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993)). Accordingly, a party seeking a new trial based on alleged erroneous evidentiary rulings bears a "heavy burden." *Alverio*, 2001 WL 615240, at *4. In determining whether any of the challenged rulings were erroneous, the Court is mindful that evidentiary rulings are within a trial court's discretion and, as such, they are accorded great deference on review and will not be overturned in the absence of a clear

abuse of discretion. *Id.*; *Hasham v. California State Board of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000); *Rodriguez v. Anderson*, 973 F.2d 550, 552-53 (7th Cir. 1992). As the Seventh Circuit has put it quite pungently, a trial judge's discretionary rulings will be reversed only if they "strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Rodriguez*, 973 F.2d at 552 n.3 (quotations omitted).

Moreover, a party seeking a new trial must show not only that errors were committed, but that they were "substantial enough to deny him a fair trial." *Wilson*, 25 F.3d at 581; *see also Alverio*, No. 00-1971, 2001 WL 615240, at *4 ("Even if a judge's rulings are found to be erroneous, they may be deemed harmless if the record indicates that the end result of the trial would have remained unchanged"); *see also Hasham*, 200 F.3d at 1048 (evidentiary errors warrant a new trial "only if a significant chance exists that they affected the outcome of the trial"); Fed. R. Civ. P. 61 ("[n]o error in either the admission or exclusion of evidence . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). A district court's denial of a motion for a new trial will not be reversed "unless a clear abuse of discretion is shown." *Wilson*, 25 F.3d at 584; *Rodriguez*, 973 F.2d at 553; *Winger v. Winger*, 82 F.3d 140, 143 (7th Cir. 1996); *Hasham*, 200 F.3d at 1052.

Applying these standards, the Court finds that neither of plaintiff's arguments warrants a new trial in this case.

## I.

As explained above, Mr. Kaplan presented to the jury a malicious prosecution counterclaim. That counterclaim was based on the assertion that Mr. Jacobson had initiated a state court criminal battery suit against Mr. Kaplan, that the criminal charge was terminated in favor of Mr. Kaplan, and that Mr. Jacobson pursued the charge maliciously and without probable cause. Plaintiff concedes, as he must, that in light of this counterclaim, the manner in which the state court criminal prosecution was terminated was relevant and was properly admitted into evidence. However, plaintiff argues that he was unfairly prejudiced because defense counsel was allowed to go farther, and to cross-examine Mr. Jacobson concerning the state trial court's comments at the end of the criminal battery trial (Pl.'s Mot. for New Trial, at 2-6). For several reasons, the Court disagrees.

*First*, we emphasize there can be no question that testimony concerning the disposition of the state court criminal prosecution against Mr. Kaplan was relevant to the malicious prosecution counterclaim. Plaintiff did not file a pretrial motion to sever the malicious prosecution counterclaim from Mr. Jacobson's claims, as plaintiff could have done had he believed that evidence concerning the state court criminal prosecution would create unfair prejudice. And now, of course, plaintiff cannot seek to resurrect a severance motion he never filed, under the guise of a request for a new trial. *See, e.g., Boyd v. Village of Carol Stream*, 99 C 6514, 2001 WL 641301, *1 (a motion for a new trial is not a vehicle for relitigating issues or presenting new theories).

*Second*, no doubt recognizing the relevance of evidence concerning the termination of the state court criminal proceeding against Mr. Kaplan, plaintiff argues that his testimony about it on cross-examination nonetheless should have been barred under Federal Rule of Evidence 403. However, that argument is unavailing. "Relevant evidence" is defined as evidence "having any

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." Fed. R. Evid. 401. Thus, by definition, evidence that is relevant will "prejudice" one side or the other. As relevant here, Rule 403 bars the admission of relevant evidence only where its probative value is *"substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."* Fed. R. Evid. 403 (emphasis added). *See United States v. Lightfoot, Jr.*, 224 F.3d 586, 588 (7th Cir. 2000) (even relevant evidence may be excluded if prejudicial effect outweighs benefit jury would obtain from considering it, but balancing is "quintessential job for trial judge" who is in best position to weigh evidence). The comments explain that, as used in Rule 403, "unfair prejudice" means "an undue tendency to suggest decision on a improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes, Fed. R. Evid. 403. The comments further state that in deciding whether unfair prejudice would substantially outweigh the probative value of evidence, "consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." *Id.*

In this case, the cross-examination of Mr. Jacobson concerning the disposition of the criminal charge did not go on at such length (it spanned only a few minutes and about eight pages of transcript) that it ran any appreciable risk of overwhelming the other evidence in the case. Nor was there any testimony concerning credibility findings in the criminal proceeding, such that there was any risk that a jury would think that in another legal proceeding Mr. Jacobson had been found untruthful. In the Court's view, the only risk of "unfair prejudice" from the cross-examination testimony was the possibility that a jury would believe that because the *criminal* battery prosecution initiated against Mr. Kaplan failed, so too should the *civil* battery action against Mr. Kaplan fail.

It was precisely because of this potential risk that the Court gave the jury the following instruction:

> However, evidence of the disposition on the criminal charge is not relevant to your consideration of either of the plaintiff's claims in this case – that excessive force was used during his arrest or that the defendant Ian Kaplan committed the tort of battery against plaintiff Ernst Jacobson on December 22, 1996. That evidence may not be considered by you during your deliberations on those issues. That evidence may be considered only for the limited purpose of deciding whether counter-plaintiff Kaplan has proven the requisite elements of his malicious prosecution claim, which I will now instruct you about.

That instruction – which plaintiff endorsed during the instruction conference – adequately addressed any possibility of jury confusion on that point. *See, e.g., United States v. Best*, 250 F.3d 1084, 1092 (7th Cir. 2001) (noting that limiting instructions "are affective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence").

*Third*, the Court finds that, to the extent that the testimony on cross-examination arguably could be construed as unfairly prejudicial, plaintiff has waived any right to complain about it because the testimony was invited by Mr. Jacobson's statements on direct examination. On direct examination, Mr. Jacobson was asked about the criminal proceeding (04/17/01 Trial Tr. 100-103). During that examination, Mr. Jacobson testified about his conversations with the prosecutor in the criminal complaint that he swore out (*Id.* at 101), and he was specifically asked about the result of the criminal trial (*Id.* at 102-103). Mr. Jacobson denied that the trial judge in the state court criminal matter had entered a finding of guilty or a finding of not guilty, and said only that the outcome of the trial was that it was dismissed (*Id.* at 103). Mr. Jacobson further testified that, in dismissing the case, the judge had stated that, "he didn't want to rule on it, it was a willful want of prosecution, and that it was a civil matter" (*Id.* at 102). That testimony, unanswered, could have led to the inference that

the state trial judge had endorsed Mr. Jacobson bringing a civil action, and therefore might have led the jury to improperly attach heightened credibility to Mr. Jacobson's claims for that reason alone.

The cross-examination of which plaintiff complains was a reasonable response to that testimony by Mr. Jacobson on direct examination. In particular, the defense elicited the testimony that, contrary to Mr. Jacobson's direct examination testimony, the state court judge said nothing about the criminal prosecution for battery being dismissed because it was "a civil action" (04/17/01 Tr. at 128). Plaintiff does not assert that the defense misled Mr. Jacobson into this testimony, or that the testimony on cross-examination was incorrect.[1] Mr. Jacobson's testimony on direct examination opened the door to this cross-examination concerning the termination of the criminal battery charge. *See United States v. Moore*, 115 F.3d 1348, 1358 (7th Cir. 1997) (stating that when a party opens a door to evidence that is otherwise inadmissible, that party cannot complain about the admission of that evidence). Plaintiff might have sought to shut the door to this cross-examination by offering a stipulation that correctly stated how the criminal battery prosecution had been terminated. But plaintiff never offered such a stipulation.[2]

---

[1] At trial, plaintiff argued that the use of the transcript from the criminal proceeding to refresh Mr. Jacobson's recollection about what had transpired was improper on grounds of hearsay, an objection that the Court rejected (04/17/01 Tr. 125, 126). In his post-trial motion, plaintiff does not reassert the hearsay argument as a basis for the alleged error.

[2] Plaintiff argues that he did not open the door, because he was required to examine Mr. Jacobson on this point since the malicious prosecution counterclaim was part of the case (Pl.'s Reply Mem. at 2). That argument is without merit. Plaintiff does not explain why it was necessary to ask Mr. Jacobson anything at all about the termination of the criminal case, as there was no dispute that it terminated in Mr. Kaplan's favor (*i.e.*, he was not found guilty), much less to elicit the gratuitous testimony that the state trial judge said that the case "was a civil matter" (04/17/01 Trial Tr. at 102).

7

Accordingly, on the facts presented here, the Court finds that there was no error in permitting the defense to cross-examine Mr. Jacobson concerning the circumstances of the termination of the criminal battery proceeding.[3]

## II.

Plaintiff's second assignment of error traces back to a ruling issued some 11 months before trial by the district judge presiding in the case prior to the parties' consent to the jurisdiction of this Court for trial. During discovery, plaintiff sought production of investigative notes prepared by an Amtrak police officer, Mr. Poznanski, concerning his interviews with various witnesses to the events of December 22, 1996. The Court denied the motion to compel, finding that the interview notes were prepared at a time that litigation with Mr. Jacobson was likely and thus would fall within the

---

[3] Plaintiff cites to *Borunda v. Richmond*, 885 F.2d 1384, 1387 (9th Cir. 1998), and *Schultz v. Thomas*, 832 F.2d 108 (7th Cir. 1987), to support his claim that defendants' examination of Mr. Jacobson concerning termination of the criminal charge should not have been permitted (Pl.'s Mot. at 3-5). As the Court explained during the instruction conference, neither of those cases indicates that there was error in the Court's admission of testimony by Mr. Jacobson on cross-examination concerning the disposition of the criminal case against Mr. Jacobson.

In *Borunda*, the plaintiffs alleged that defendant officers had arrested them without probable cause. During the trial, the court allowed evidence that the plaintiffs were acquitted on the state court criminal charges. On review, the Ninth Circuit found that the admission of this evidence did not violate the defendants' right to a fair trial, even though the reviewing court stated that it "would have been inclined to exclude the evidence of acquittals altogether" because of the lack of relevance and was critical of the quality of the limiting instruction given. 885 F.2d at 1388-89. By contrast, in this case, the disposition of the state court criminal proceeding was highly relevant, since Mr. Kaplan could not establish a malicious prosecution claim without proof that the state court criminal proceeding was terminated in his favor; the limiting instruction here met with plaintiff's approval; and the testimony here was invited by plaintiff's own statements on direct examination.

In *Schultz*, plaintiff sued two police officers (among other defendants), claiming that they used excessive force and had falsely arrested him. The plaintiff went to trial, and the state trial court rendered an oral decision acquitting Schultz of the disorderly conduct charge. At the federal trial, the court allowed into evidence the transcript of the state court judge's decision, and further allowed the state court judge to testify to the conclusions he reached concerning the credibility of the defendant officers. On review, the Seventh Circuit found that this evidence "so unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them." *Schultz*, 832 F.2d at 110. This case presents a materially different situation than that encountered in *Schultz*, in that (1) evidence concerning the disposition of the criminal proceeding is directly relevant here, whereas in *Schultz* it was not; (2) the state court trial judge did not testify in this case concerning a party's credibility, as was the case in *Schultz*; (3) the plaintiff here invited testimony about the criminal proceeding (both by not offering a stipulation as to its disposition and by his testimony on direct examination), unlike the case in *Schultz*; and (4) there was a limiting instruction given here directing the jury not to consider the disposition of the criminal proceeding for purposes of deciding plaintiff's civil claims, unlike the case in *Schultz*.

8

work product doctrine (05/10/00 Tr. at 6). However, the Court ordered Amtrak to provide a log of those interview notes within seven days (*Id.* at 6-7), which was done (*See* Defs.' Response to Pl.'s Motion for a New Trial, at Ex. G). That log discloses that Mr. Poznanski interviewed both Mr. Jacobson and Mr. Kaplan, as well as three other individuals who purported to see what occurred: Ms. Carlson and Messrs. Ortiz and McManus. All of the persons interviewed by Mr. Poznanski testified at trial, as did Mr. Poznanski himself. Plaintiff argues that he should have been allowed access to all of the witness statements prepared by Mr. Poznanski in order to expose what he claims were Mr. Poznanski's "lies" at trial (Pl.'s Mot. at 7). Plaintiff's arguments fail for several reasons.

Plaintiff does not identify any error in the Court's original ruling that the witness notes are privileged (although plaintiff incorrectly states that the ruling was based on the "deliberative process privilege" (Pl.'s Mot. at 6). Indeed, during the proceedings on May 10, 2000, when the Court upheld the privilege assertion, the Court allowed for the possibility that plaintiff nonetheless could obtain access to the interview notes if "he makes a showing that there are facts in those notes, not strategy or mental impressions, but facts in those notes that can't be obtained from some other source" (05/10/00 Tr. at 6). However, plaintiff never sought an *in camera* review of the notes, never deposed Mr. Poznanski to develop evidence to support production, and never argued that the notes should be produced under the hardship exception to work product. Indeed, plaintiff admits that he could not establish a basis for production under that standard (Pl.'s Reply Mem. at 5).

Plaintiff nonetheless argues that all of the witness statements should have been produced because Mr. Poznanski allegedly used them at trial, thereby waiving any privilege by operation of Federal Rule of Evidence 612, which provides that "if a witness uses a writing to refresh memory for the purpose of testifying, either – (1) while testifying, or (2) before testifying, if the Court in its

9

discretion determines that it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, . . ." Plaintiff's assertion that Mr. Poznanski "used the statements at trial" (Pl.'s Mot. at 7) is simply wrong. Mr. Poznanski did not use or refer to any of the witness statements while testifying, and therefore production was not required on that basis.

As for the second prong of Rule 612, at the beginning of trial defense counsel disclosed that Mr. Poznanski had reviewed the notes of his interview with Ms. Carlson. The Court then ordered production of those notes – which plaintiff received prior to either Ms. Carlson or Mr. Poznanski taking the stand. However, any suggestion that Mr. Poznanski reviewed notes of other interviews to refresh his recollection before trial is wholly without basis. Defense counsel specifically represented that Mr. Poznanski had not reviewed any of the other witness interview notes. If plaintiff had doubted the veracity of that representation, he was free to ask Mr. Poznanski on cross-examination whether he had reviewed other witness interview notes. Plaintiff did not pursue that line of questioning at trial, and having failed to do so, is not entitled to have the Court assume that Mr. Poznanski would have answered such questions in a way to require production of the interview notes.

Finally, to the extent that plaintiff thought Mr. Poznanski testified falsely concerning his interview with Mr. McManus, plaintiff had the opportunity to develop any inconsistencies through the examination of Mr. McManus, who testified at trial. Plaintiff also was free to argue that matter to the jury. The fact that the jury chose to accept defendants' rather than plaintiff's version of events (as it was permitted to do by the evidence) does not aid plaintiff's claim of error.

Accordingly, the Court finds no error in denying the production of Mr. Poznanski's interview notes.

## III.

Although the Court rejects plaintiff's two assertions of error, in the interest of completeness, the Court further finds that those alleged errors – singly or together – would not warrant a new trial because they were not "substantial enough to deny him a fair trial." *Wilson*, 25 F.3d at 581. At bottom, this case required the jury to assess the credibility of Mr. Jacobson's and Mr. Kaplan's markedly different version of what transpired on December 22, 1996. Each side called occurrence witnesses to bolster their respective versions of events: plaintiff called Ms. Carlson, and defendants called Mr. Ortiz, Mr. McManus, and Mr. Waldman. The examination of Mr. Jacobson concerning the disposition of the state court criminal battery proceeding was only a small portion of this testimony, and in the Court's view, did not divert the focus of the jury from assessing what the occurrence witnesses had to say about the events of December 22, 1996. As for plaintiff's assertion that the cross-examination did not show that Mr. Jacobson testified incorrectly about the state court criminal matter (Pl.'s Reply Mem. at 2), that was a matter for the jury to decide. Mr. Jacobson was not unfairly prejudiced by the jury seeing his testimony on the point probed through cross-examination. And, however the jury decided the point plainly did not prejudice Mr. Jacobson in defending the malicious prosecution counterclaim – a claim on which Mr. Jacobson prevailed.

Plaintiff's complaint that the absence of the interview notes impeded his ability to examine Mr. Poznanski at trial is not a complaint that strikes at the core of the case. Plaintiff sought to show that Mr. Poznanski (and Amtrak) conducted a "sham" investigation (Pl.'s Mem. at 8), and that they engaged in a "coverup" of what occurred (04/17/01 Trial Tr. at 11-12). However, Mr. Poznanski was not an occurrence witness to the events in question; the occurrence witnesses all were identified and testified. The only relevance of plaintiff's "sham investigation" attack would be in defense of

the malicious prosecution counterclaim (to show that the criminal prosecution failed not because it was malicious or non-meritorious, but because Amtrak hid evidence), or to advance a claim for punitive damages. Clearly, the lack of access to the interview notes did not prejudice plaintiff in either of these respects: plaintiff prevailed on the malicious prosecution counterclaim, and the punitive damage issue became moot when the jury found that plaintiff had not established liability on either of those claims.

## CONCLUSION

The parties in this case all sought a jury trial, and the jury in this case did precisely what juries are supposed to do: it heard the conflicting evidence, made credibility determinations, and reached a verdict that was supported by the evidence and was consistent with the instructions given by the Court. Plaintiff does not challenge any of the legal instructions given, or the sufficiency of the evidence to support the verdict. Plaintiff has had a fair day in court on his claims. The two evidentiary points that he raises on the post-trial motion are insufficient to warrant a new trial.

Accordingly, plaintiff's motion for a new trial is denied.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: July 9, 2000